**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ruben Garza CORONADO,
Defendant-Appellant.**

No. 75–3609.

United States Court of Appeals,
Fifth Circuit.

June 16, 1977.

Rehearing Denied July 20, 1977.

168

John W. Clark, Mission, Tex. (Court-appointed), for defendant-appellant.

Ruben Garza Coronado, pro se.

Edward B. McDonough, Jr., U. S. Atty., Anna E. Stool, George A. Kelt, Jr., John P. Smith, James R. Gough, Jr., Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, SIMPSON and FAY, Circuit Judges.

GOLDBERG, Circuit Judge:

Ruben Garza Coronado appeals from his conviction upon a guilty plea of conspiracy to possess cocaine with intent to distribute. 21 U.S.C. §§ 846, 841(a)(1). Coronado claims the transcript of the rule 11 proceeding at which the court accepted the plea was inadequate because the court failed to impart to him an understanding of the charge and because he was not placed under oath. Coronado also levels several attacks on the voluntariness of the plea. We find that the district court acted properly in accepting the plea on the basis of the facts and contentions before it. We decline to resolve Coronado's other claims, which he never presented to the district court and with respect to which our record is silent. We thus conclude that all claims are either

without merit or improperly presented at this stage. We affirm.

## I.

Coronado originally pleaded not guilty to the three-count indictment. The court appointed counsel to represent him. On July 3, 1975, two weeks before the trial date, the court received a letter from Coronado requesting new counsel. On July 7 Coronado and his counsel appeared before a magistrate for a hearing on the request. The magistrate advised them that the July 17 trial date would not be passed, and Coronado withdrew the motion.

On the day of trial, July 17, Coronado changed his plea to guilty. He executed a three page oath stating that the plea was made voluntarily and with an understanding of the charges. The statement recounted that the only agreement Coronado had reached with the United States Attorney was that in return for a guilty plea to count one (conspiracy to possess with intent to distribute), the government would not prosecute counts two and three (separate acts of distribution).[1]

In addition to executing the written statement, Coronado appeared at a rule 11 proceeding.[2] The court did not place him under oath. The court announced that Coronado was charged with "knowingly and intentionally" conspiring to possess cocaine with intent to distribute. The government attorney read the indictment, which charged that Coronado and two codefendants "knowingly and intentionally did combine, conspire, confederate, and agree together and with each other, and with other persons unknown . . . to unlawfully possess, with intent to distribute, a quantity of cocaine . . . ." The indictment as read at the hearing also set forth four overt acts. One was a meeting at which a codefendant introduced Coronado to a government undercover agent as the person who was to supply the cocaine for a delivery that had been discussed earlier. Another overt act was a later meeting at which Coronado and a different codefendant delivered six ounces of cocaine to the government agent.

The judge told Coronado that plea bargains were permissible but that the court itself did not participate in them. Upon the court's request to state any bargains, the United States Attorney said that the government had agreed to dismiss counts two and three in return for the plea to count one. He stated further that if Coronado were to testify in the prosecution of another defendant, the government would make his cooperation known to the probation office for "whatever consideration that they would want to give that information." Coronado's attorney and Coronado himself both attested to the accuracy of the government's statement of the bargain. Coronado twice reiterated that he had no other bargains.

The court had the United States Attorney state some of the facts on which the charge was based. The statement included a description of the meetings recounted in the indictment. Coronado said that he had

---

1. The oath also set forth the rights being waived and apprised Coronado of the maximum punishment.

2. At that time, Fed.R.Crim.P. 11 provided:

   A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

   Rule 11 has now been amended, effective December 1, 1975, to provide much greater detail with respect to the appropriate procedure for accepting guilty pleas. Because the proceeding in the instant case took place before the amendment became effective, the old rule governs. *See Goodwin v. United States,* 544 F.2d 826 (5th Cir. 1977); *Summers v. United States,* 538 F.2d 1208, 1210 n. 2 (5th Cir. 1976).

done the things described. He declared that he was pleading guilty because he was guilty.[3]

The court accepted the plea and at a subsequent proceeding imposed the maximum sentence of fifteen years plus a three year special parole term. The imprisonment was to run concurrently with Coronado's twenty-five year state sentence on another conviction.

Coronado did not move to withdraw his plea under Fed.R.Crim.P. 32(d), nor did he take any other steps to apprise the district court of the arguments advanced in this court. Without assistance from his court-appointed counsel, Coronado himself perfected this appeal.[4]

Coronado's pro se filings with this court raise numerous issues. He claims that his plea was coerced, that he received ineffective assistance of counsel, that the Government failed to fulfill its promise of a light sentence, that no one explained to him the meaning of "conspiracy", that the indictment was defective because not signed by the grand jury foreman, and that his conspiracy conviction was improper because all alleged co-conspirators were acquitted.

Coronado's court-appointed attorney, charged with the responsibility of representing Coronado on appeal, took the position that the appeal was frivolous and attempted to withdraw. After the Fifth Circuit called a colorable claim to his attention, Coronado's attorney filed a brief on the merits. He argued that the failure to place Coronado under oath at the rule 11 proceeding vitiated the plea and that the rule 11 transcript failed to disclose that Coronado understood the charges against him.

II.

At the outset we must note our limited capacity to review many of these issues at this juncture. Our record contains only the formal filings in this case, the rule 11 transcript, and the sentencing transcript. Coronado did not move under Fed.R.Crim.P. 32(d) to withdraw his plea, nor has he taken any other steps to raise his contentions before the district court. Under such circumstances reasonable appellate practice calls for determining only whether the district court acted properly in accepting the plea and imposing sentence on the basis of the record and contentions then before it. *See United States v. Mims*, 440 F.2d 643 (8th Cir. 1971) (on direct appeal from guilty plea where there was no rule 32(d) motion court would consider only whether there was compliance with rule 11); *United States v. Briscoe*, 428 F.2d 954 (8th Cir.), *cert. denied*, 400 U.S. 966, 91 S.Ct. 378, 27 L.Ed.2d 386 (1970) (same); *cf. United States v. Cooper*, 410 F.2d 1128 (5th Cir. 1969) *cert. denied*, 400 U.S. 868, 91 S.Ct. 111, 27 L.Ed.2d 107, (1970) (on appeal from denial of rule 32(d) motion court would not consider contentions not presented to district court); *Wilkins v. United States*, 351 F.2d 609 (5th Cir. 1965) (on appeal of denial of 28 U.S.C. § 2255 relief from guilty plea court would not consider contentions not presented to district court); *Eller v. United States*, 327 F.2d 639 (9th Cir. 1964) (court on direct appeal of guilty plea where there was no rule 32(d) motion would not consider claim that plea was induced by unkept promise of leniency).[5]

In accordance with this standard, we decline to resolve Coronado's claims of coercion and ineffective counsel. Nothing presented to the district court suggested

3. In addition, the court explained the maximum sentence and elicited Coronado's statement that he understood it. The court also explained the rights waived by a guilty plea.

4. Coronado's counsel did file with the district court a motion to reduce sentence. The record does not disclose the disposition of that motion.

5. As we develop later, claims of noncompliance with rule 11 must be resolved solely on the basis of the rule 11 transcript. That transcript provides all that is needed and all that is allowed for the resolution of such claims. We can therefore adjudicate rule 11 challenges on direct appeal without an initial presentation of the particular arguments to the district court. In accepting a guilty plea a district court always faces the issue of whether the rule 11 proceedings are adequate.

such claims might have merit or put the court on notice that a plea should not be accepted without further inquiry along these lines. Coronado advances no contention that the rule 11 proceeding itself was deficient in regard to these matters. The district court therefore did not err in accepting the plea.

■ We reiterate, however, that our conclusion should not be given significance inconsistent with the limited procedural context. With respect to these claims which do not affect the adequacy of the rule 11 proceeding and which the district court was not required to notice on its own motion, we decline at this stage to decide the merits or even to determine whether a hearing is

appropriate. We do so, however, without prejudice to Coronado's right to present the claims to the district court in the first instance, either under Fed.R.Crim.P. 32(d) or 28 U.S.C. § 2255. *See United States v. Mims, supra* (affirming guilty plea conviction not challenged below without prejudice to claims of ineffectiveness of counsel and involuntariness of plea); *United States v. Briscoe, supra* (affirming guilty plea conviction not challenged below without prejudice to claim of involuntariness).[6]

■ The issues that remain are therefore whether the rule 11 transcript discloses that Coronado understood the charges and whether failure to place him under oath invalidates the plea.[7]

6. In some circumstances a district court must conduct an evidentiary hearing to resolve a challenge to a guilty plea even when the earlier rule 11 proceedings were flawless. In *Fontaine v. United States*, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) the Supreme Court held that a § 2255 petitioner who had alleged facts making his coercion contention colorable was entitled to a hearing. *Fontaine* requires a hearing for some allegations but not for others. Whether the court must conduct a hearing depends upon the level of support the claimant adduces for his or her challenge to the plea. We required hearings in *Matthews v. United States*, 533 F.2d 900 (5th Cir. 1976) (coercion claim supported by third person's affidavit that defendant's counsel told defendant that U.S. attorney had communicated threat from judge to impose harsh sentence if defendant stood trial); *Vandenades v. United States*, 523 F.2d 1220 (5th Cir. 1975) (claim of unfulfilled promise to impose concurrent rather than consecutive sentences supported inferentially by sentencing judge's letter ambiguously suggesting he may have intended to impose concurrent sentences); and *Dugan v. United States*, 521 F.2d 231 (5th Cir. 1975) (unfulfilled promise claim supported by county sheriff's and deputy's affidavits that there were such promises). *Cf. Blackledge v. Allison*, —— U.S. ——, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) [21 Cr.L. 3025; 1977] (specific allegations of unkept bargain, though unsupported by affidavit, require hearing on habeas challenge to plea accepted without rule 11-type procedures). In *Allison* the Supreme Court said that "before dismissing facially adequate allegations short of an evidentiary hearing, ordinarily a district judge should seek as a minimum to obtain affidavits from all persons likely to have firsthand knowledge of the existence of any plea arrangement." 97 S.Ct. at 1633 n. 25.

We held that hearings were not required in attacks on guilty pleas in *Bryan v. United States*, 492 F.2d 775 (5th Cir.) (en banc), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974) (unfulfilled promise claim involving facts within judge's personal knowledge); *United States v. Barrett*, 514 F.2d 1241 (5th Cir. 1975) (coercion claim where no reason appeared to doubt defendant's rule 11 statements to the contrary); *Rosado v. United States*, 510 F.2d 1098 (5th Cir. 1975) (unfulfilled bargain claim where no reason appeared to doubt defendant's rule 11 denial of such a bargain); and *Frank v. United States*, 501 F.2d 173 (5th Cir. 1974) (same). *Cf. Clayton v. Estelle*, 541 F.2d 486 (5th Cir. 1976) (refusing to require hearing on habeas challenge to state guilty plea on basis solely of petitioner's self-serving allegations of coercion which were inconsistent with his statements at plea proceeding); *Thomas v. Estelle*, 550 F.2d 1014 (5th Cir. 1977) (similar). If Coronado should seek further relief in a district court, the task will be to measure his allegations against these decisions.

7. We deal with Coronado's claim of an unfulfilled plea bargain as part of our treatment of the oath issue.

We need not consider the proper forum for Coronado's two remaining claims, nor whether they survive the plea of guilty. *Cf. United States v. Tallant*, 547 F.2d 1291 (5th Cir. 1977) [No. 75–4244; Mar. 7, 1977] (discussing plea's effect in foreclosing various issues); *Trahan v. Estelle*, 544 F.2d 1305 (5th Cir. 1977); *id.* at 1309 (Goldberg, J., concurring) (same). Coronado alleges that the grand jury foreman failed to sign the indictment, but our record shows what at least purports to be his signature. We have no reason to doubt the authenticity of that signature. Coronado also claims that his conviction was invalid because all co-conspirators were acquitted, but the record discloses otherwise. One co-conspirator pleaded guilty,

### III.

█ The "understanding" issue arises from the district court's failure to make any attempt to explain to Coronado the meaning of "conspiracy". That term is not so simple that a lay person can be expected necessarily to understand it. The word "conspiracy" does not have a certainty, as attested by the thousands of cases that have attempted to unravel its mysteries. Although we do not seek to impose elaborate requirements upon district courts, we believe that they should go further than the court below to ensure that a conspiracy defendant understands the charge. To a pro se habitue of a prison, legal linguistics are often a foreign tongue. We do not think we burden our trial judges in asking that they inform a guilty pleader of some aspects of legal argot and other legal concepts that are esoteric to an accused. District courts have jury instructions readily available and can certainly frame without undue difficulty an appropriate statement apprising a defendant of the nature of the charge to which he or she is pleading guilty.

We have banished from our jurisprudence the days when defendants were lined up and the guilty pleas were taken in wholesale lots without individualization. The expanded procedure is a new principle that is very sacred to modern day jurisprudence. Even a plea taking session should have more dignity than a bargain basement sale at a department store. It should be unhurried and patient. It should never be so frenetic that the judge's explication of the charges is omitted.

Our conclusion requiring such an explanation draws support from our prior rule 11 decisions. In *Sierra v. Government of Canal Zone*, 546 F.2d 77 (5th Cir. 1977) we reversed a conviction where the rule 11 transcript failed to disclose the defendant's understanding of the mental element required to sustain a conviction of second degree murder.[8] The concept of conspiring is no simpler than the intent requirement of second degree murder, and explicitly assuring the defendant's understanding is equally important. Moreover, no matter how simple the charges, a district court should make the minor investment of time and effort necessary to set forth their meaning and demonstrate on the record that the defendant understands. In *Sierra* we also reversed a conviction for possessing marijuana with intent to distribute, saying that that crime too warrants fuller explanation than the district court afforded.

Developing on the record the defendant's understanding of the charges places at most an inconsequential burden on the district court. There is no excuse for failing to undertake procedures of such utility in ensuring voluntary and intelligent pleas that are susceptible to meaningful review. The rule 11 proceedings become more efficacious and meaningful in direct proportion to the explanatory details that are developed at such a hearing. If a guilty plea is taken with little factual and legal explanation, its seriousness is demeaned.

█ The nature of the problem renders impossible an exposition of exactly what the district court should tell the defendant in various cases involving varying crimes. Our statement in *United States v. Gearin*, 496 F.2d 691, 696 (5th Cir. 1974), *cert. denied*, 419 U.S. 1113, 42 L.Ed.2d 810 (1975) provides a useful point of departure: district courts should address the problem on the assumption that the defendant is ignorant of the nature of the charges.[9] Thus the types of statements included in jury charges may provide a helpful reference. We agree with the Third Circuit that the

---

albeit to a substantive count, and the government dismissed the conspiracy count. Dismissal of the charge of conspiracy under such circumstances does not invalidate Coronado's conviction.

8. *See also Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (state court's failure to inform defendant pleading guilty that intent is required for conviction of second degree murder renders plea involuntary and requires habeas relief).

9. This statement in *Gearin* dealt with the defendant's understanding of the rights being waived rather than of the charges. It is equally applicable in both situations.

court "must explain the meaning of the charge and what basic acts must be proved to establish guilt." *Woodward v. United States*, 426 F.2d 959, 962 (3d Cir. 1970), *followed in United States v. Cantor*, 469 F.2d 435 (3d Cir. 1972). The court must "advise the accused fully and not merely perfunctorily as to what acts are necessary to establish guilt." *Hulsey v. United States*, 369 F.2d 284, 286 (5th Cir. 1966). And the defendant must possess "an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969).

■ The court must not rely on a routine boilerplate question to the defendant designed to elicit an acknowledgement of understanding. *See Sierra v. Government of Canal Zone, supra; Monroe v. United States*, 463 F.2d 1032, 1035 (5th Cir. 1972). Nor should the court rely solely upon statements that it makes to the defendant. In adhering to the rule's mandate that it address the defendant personally, the court should engage in extensive an interchange as necessary to assure itself and any subsequent reader of the transcript that the defendant does indeed fully understand the charges. With respect to some points the court may choose to have the defendant recount his or her understanding of the charges in narrative form and in his or her own language. We do not suggest an arcane definition of the legal concepts, nor a law review exegesis, but enough simple language that a person unlearned, untutored and unschooled could understand the charges.

We find no reversible error under the circumstances here, however, because the rule 11 proceeding on its face discloses, despite the trial court's failure sufficiently to make the required explication of the charges, that Coronado understood them. The prosecution described meetings between Coronado, two codefendants and a government agent. At one of these Coronado and one codefendant made a delivery of cocaine. Coronado told the court that these allegations were true. The transcript as a whole makes clear that Coronado understood that the government intended to rely upon proof of these facts, and proof of these facts would have required Coronado's conviction. Coronado understood the proof that would be necessary to uphold the charges. He makes no claim that the facts discussed and admitted at the hearing do not establish his guilt.[10]

■ We must be penurious in dispensing with the district judge's exposition of the charges in a personal interchange with the defendant. It can be forgiven only if the record's demonstration of understanding is plenary and free from parsimony. But here this standard was met. Under these circumstances we do not upset the conviction.[11]

■ This analysis should not be taken as an invitation to look beyond the four corners of the rule 11 proceeding in determining whether the defendant understood the charges. One purpose of rule 11 is to

---

10. Coronado does not claim that any require mental element was lacking. The Government attorney read the indictment immediately before Coronado announced his desire to plead guilty, and the indictment alleged that the agreement to carry out the incriminating acts was entered "knowingly and intentionally." In opening the proceedings the court itself had described the charge as "knowingly and intentionally" conspiring unlawfully to possess cocaine with intent to distribute. These statements, coupled with the element of intention implicit in the meetings proof of which Coronado understood the Government would be required to adduce, evince Coronado's understanding of the requisite mental element.

11. Rule 11 and *McCarthy* require the court to address the defendant *personally*. Here the court did so. Many of the statements upon which we rely in concluding that Coronado understood the charges came as part of a direct discussion between Coronado and the judge. That we also consider Coronado's responses to the court as to the correctness of statements made by the prosecutor should not be taken as an indication that we relax to any extent the requirement that the court address the defendant personally. We reversed a conviction for failure to abide that provision in *United States v. Crook*, 526 F.2d 708 (5th Cir. 1976), holding that the determination of whether Crook was one would have to await further proceedings.

spread upon the record the defendant's understanding and the other information detailed in the rule. Failure to comply with rule 11 mandates reversal whether or not the government could show or has shown that compliance would not have affected the plea or that the plea was voluntary. "There is no adequate substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him." *McCarthy v. United States*, 394 U.S. 459, 470, 89 S.Ct. 1166, 1173, 22 L.Ed.2d 418 (1969) (emphasis in original). We follow *McCarthy* in holding noncompliance with rule 11 requires that the defendant be permitted to plead anew. Here, however, the rule 11 record itself demonstrates that Coronado understood the charges; rule 11 was complied with.[12]

### IV.

■ The remaining contention involves the failure to place Coronado under oath. The oath requirement stemmed not from rule 11 but from our decision in *Bryan v. United States*, 492 F.2d 775 (5th Cir.) *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974). In describing the procedures to be followed in accepting a guilty plea, we declared unequivocally, "The defendant shall be placed under oath." 492 F.2d at 781. We described our prescriptions as the "minimum practice." *Id.* More recently we have labeled the oath a "critical requisite." *Vandenades v. United States,* 523 F.2d 1220, 1224 (5th Cir. 1975). Here the district court violated the *Bryan* mandate by failing to place Coronado under oath at the rule 11 proceeding.[13]

■ We analyzed the effect of such an error in *United States v. Maggio,* 514 F.2d 80 (5th Cir.), *cert. denied,* 423 U.S. 1032, 96 S.Ct. 563, 46 L.Ed.2d 405 (1975). While reiterating that *McCarthy* required automatic reversal of rule 11 violations, we adopted a more lenient approach for violations of the *Bryan* oath requirement. The purpose of placing the defendant under oath is to ensure that his or her statements to the court are true. The oath helps to eliminate the possibility that a defendant will believe that part of the process of implementing a plea bargain is to deny that such a bargain exists.[14] In *Maggio* we re-

---

**12.** Whether this transcript would pass muster under the new rule 11 is less clear. That question is not before us. *See* note 2 *supra.* The old rule forbade the judge to accept a guilty plea "without . . . determining that the plea is made . . . with understanding of the nature of the charge." The new rule requires that the court "inform [the defendant] of and determine that he understands . . . the nature of the charge." Thus, while in the case at bar the court's failure to inform Coronado of the nature of the charge is cured by the showing that Coronado understood, that might not be true under the new rule. Today we affirm a conviction by the application of the antiquated rule 11 but without passing upon unpresented issues. Whatever the requirements under the new rule, we reiterate that district courts should go further than did the court below.

**13.** Coronado did execute a written oath, but that does not abrogate the need for placing the defendant under oath at the rule 11 proceeding. Writings provide no substitute for the rule's requirement of a personal interchange between court and defendant. The *Bryan* oath rule enhances the effectiveness of the rule 11 proceeding by helping to eliminate any possibility that the defendant will fabricate answers and thus sap the procedure's usefulness. A separate sworn statement cannot replace the oath's efficacy in this regard.

The inappropriateness of relying on a written oath is demonstrated by the facts here. The government attorney revealed in open court that the written form's statements were incomplete. That form omitted any reference to the government's promise to make Coronado's cooperation known to the probation office. But as the government attorney declared at the rule 11 proceeding, the bargain did include such a provision. The required proceeding in court is much more likely than a written form fully to reveal the bargain's terms.

**14.** Such a belief might spring from the defendant's own misconceptions or from the cloud that in an earlier day cast its shadow over the bargaining process. Plea bargains are subject to much misunderstanding and disputation. One of their major foibles is that part of the bargain may be the defendant's agreement not to say that there is a bargain. We must therefore look at the rule 11 transcript with circumspection. Properly implemented, rule 11 and *Bryan* minimize the hazards. Rule 11 now makes clear that a bargain "must come as an open covenant, openly arrived at with judicial

fused to reverse a conviction where a subsequent hearing had determined that the defendant's statements at the rule 11 proceeding were in fact true. When a defendant tells the truth at the rule 11 proceeding, failure to administer the oath results in no prejudice. Under those circumstances we need not reverse the conviction.

■ Here Coronado does assert that there were undisclosed plea bargains. He contends in his pro se filings in this court that the government made an unfulfilled promise of a light sentence. This claim meshes with *Maggio's* standard for reviewing violations of the *Bryan* oath requirement to preclude us from passing on the issue at this stage of the proceedings. As we have indicated, on direct appeal where there has been no motion to withdraw the plea or other presentment of the issue to the district court, we review only the adequacy of the record to support the acceptance of the plea. *Maggio* establishes that our rule 11 transcript is insufficient standing alone to mandate reversal. We therefore affirm the conviction. We do so without prejudice to Coronado's right to argue to the district court in a proper proceeding that the facts here entitle him to relief under *Bryan* and *Maggio*. We intimate no view with respect to whether such a contention would require a hearing or would entitle Coronado to prevail. *Cf. Wilkins v. United States,* 351 F.2d 609 (5th Cir. 1965) (refusing to consider on § 2255 appeal contention not presented to district court that guilty plea had been induced by unfulfilled promise of leniency).[15]

While Coronado in this appeal does not find the lode of reversal that he sought, we do leave him to mine for future veins if the facts and law justify them. The judgment of the district court is AFFIRMED.

SIMPSON, Circuit Judge, specially concurring:

I agree that the transcript of the plea hearing shows compliance with rule 11, F.R. Crim.P., as Rule 11 read at the time the hearing was held. *Bryan v. United States,* 494 F.2d 775 (5th Cir. 1974 en banc), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974).

I further agree that as interpreted and limited by *United States v. Maggio,* 514 F.2d 80 (5th Cir. 1975), the direction of *Bryan,* Part II, page 781 of 492 F.2d, with respect to procedure at the time of accepting pleas of guilty or *nolo contendere* that "[T]he defendant shall be placed under oath" is not a basis for reversal here.

Finally, I agree that appointed defense counsel's argument that the Rule 11 transcript fails to show that Coronado "understood" the conspiracy charge to which he plead guilty is without merit. That transcript refutes a claim of lack of understanding of the charge.

I understand Judge Goldberg's opinion as *deciding* these three propositions and nothing additional, regardless of its discussion of other matters. So understanding, I concur.

---

oversight. A legal plea bargain is made in the sunshine before the penal bars darken." *United States v. Herman,* 544 F.2d 791, 796 (5th Cir. 1977).

15. The cases collected in note 6 *supra* may provide guidance but are not precisely applicable to the issue of whether the oath violation entitles Coronado to a hearing. In none of those cases had there been a violation of the *Bryan* oath mandate. Those cases attempted to locate the threshold a defendant must cross in order to impugn the statements he or she made at the rule 11 proceeding, but they did not consider whether a lower threshold should exist when the *Bryan* requirement has not been observed. The rationale for a lesser standard would be the need to sanction departures from *Bryan.* We express no view whether the threshold should be the same as or lower than that of the cases cited in note 6, nor whether Coronado would be able to meet the appropriate standard.